### SOUTHERN RAILWAY COMPANY *v.* WOOD.

The evidence authorized the verdict, and none of the grounds of the motion for a new trial contain assignments of error which required the trial judge to set aside the verdict of the jury and award a new trial.

Argued October 11, — Decided November 8, 1901.

Action for damages. Before Judge Fite. Whitfield superior court. October term, 1900.

*Shumate & Maddox*, for plaintiff in error.
*Jones & Martin*, contra.

Cobb, J.  Mrs. Wood sued the railway company for damages which she had sustained on account of certain alleged tortious acts committed by the defendant.  Her petition made, in brief, the following case: Desiring to go from Dalton, her home, to a certain point in Texas, she opened negotiations with the agent of the defendant at Dalton for the purchase of through tickets for herself and her three minor children to the point in Texas to which she desired to go.  In consideration of the purchase by plaintiff of tickets over the defendant's line, its agent agreed to send to petitioner's house and transport her baggage to the depot, and bring to her house the tickets and checks for her baggage.  The agent did send a dray and have the baggage transported, but did not send the tickets and checks.  When petitioner arrived at the depot, she was handed the tickets, for which she paid the sum of $78.23, and also the checks for her baggage.  Subsequently, however, the agent refused to transport as baggage one of her boxes, and demanded the return of the check for this box, and petitioner, being ignorant of her rights, surrendered the check upon the agent's agreeing to forward it by next freight-train to her point of destination.  Petitioner charges that all of her baggage did not weigh more than the number of pounds allowed to her tickets, but that, if it did, the defendant company had no right to rescind the contract which it had made to transport her baggage on these tickets.  After receiving her tickets and checks, petitioner learned for the first time that her train was behind time, which fact was well known to the agent before he sold the tickets, and the information was wrongfully and fraudulently withheld from petitioner.  Upon petitioner's complaining to the agent and offering to surrender her tickets, he agreed that he would wire the defendant's connection at Chattanooga to hold the train for her, and that the train would be held.  Petitioner charges that the agent willfully and fraudulently represented his willingness and ability to do something which he could not do, and which it is alleged he never attempted to do.  It is alleged that the box which the agent agreed to send by freight to her was not sent promptly, but was allowed to remain exposed to the weather and get wet, from which the contents of the box were damaged.  It is further alleged that petitioner was damaged by reason of being deprived of the bedding which was contained in this box, the weather being very cold, and the petitioner being unable to buy more.

When petitioner reached Chattanooga, the train over which her tickets read had gone, and petitioner was damaged by reason of delay and expense incident to this fact.    Petitioner paid full fare for herself and children, and was entitled to proper accommodations. When, however, she boarded the train in Chattanooga and exhibited her tickets to the conductor, she was informed by him that her tickets were second-class, and she was forced to go forward into a dingy, dirty smoking-car occupied by men only, many of whom were smoking, and because of the extreme cold no ventilation was or could be given, and the smoke and fumes from the tobacco made petitioner very sick, and one of her children was made very sick and never recovered, but finally died some months thereafter.    Petitioner charges that she did not know she had second-class tickets, that she had never heard of one before, and that she would not have bought them if defendant's agent at Dalton, as it was his duty to do, had advised her as to the character of the tickets.    She sues for damages on account of the treatment of her and her children, on account of the detention of her baggage, loss of time, expense incurred, sickness produced, and the death of her son.

  ` In reference to the baggage the defendant denies making any contract to carry all of it, but avers that the box left weighed a number of pounds in excess of the amount which could be transported on the tickets bought by plaintiff, who requested the agent to keep the box until she could forward the money to pay for its transportation.    The defendant denies that its agent made any agreement to hold the train at Chattanooga, and denies that he knew the Dalton train was behind time when he sold the tickets. In reference to the character of tickets, it is averred that the plaintiff requested the cheapest tickets that could be sold to her destination, and that she was carried safely and comfortably in the car in which these tickets entitled her to ride.    It denied that it or its agents were guilty of any conduct which conduced to the sickness of petitioner and her child or to the death of the latter.    The trial resulted in a verdict in favor of the petitioner for $250, and defendant's motion for a new trial having been overruled, it excepted.

  The main issue in the case as it was tried below seems to have been whether the plaintiff had contracted for second-class tickets. It seems from the evidence that during the negotiations for the tickets nothing was said either by the plaintiff or the agent about

second-class tickets, but that plaintiff stated to the agent that she desired to purchase tickets as cheaply as possible. The plaintiff testified that she had never heard of second-class tickets, and that she never intended to buy them; that while she wished to purchase her tickets at as low a rate as possible, she never asked for and never expected to obtain other than first-class accommodations. Viewing the entire evidence as to what transpired between the agent and the plaintiff on this subject, we are not prepared to say that the agent was warranted in assuming that the plaintiff wished to travel second-class. The mere fact that she stated that she desired to buy tickets as cheaply as possible would not justify this inference. This desire and the desire for first-class accommodations are not necessarily inconsistent. A person may, and we should say generally does, want the best that can be had for as little money as the seller will take for it. There is, however, a theory of the case, different from this, on which a recovery on this branch of the case was warranted. That is, that even conceding that the plaintiff contracted for second-class tickets, she was certainly entitled to ride on such a car as is usually provided for persons holding that class of tickets. There was ample evidence to sustain a finding that she was not given such accommodation as she was entitled to receive under her contract as evidenced by her tickets. The description of such a car as is usually provided for persons holding second-class tickets, as given by the defendant's witnesses, and the description by the plaintiff of the car in which she was required to ride, are totally dissimilar, and from this latter description it can be gathered that the plaintiff was required to go into a dirty, nasty smoking-car, with little ventilation, with no cushions on the seats, filled with men smoking and chewing, and in which no other ladies were riding, the only female besides herself being a negro. According to the testimony of the conductor, the second-class car of the train on the day in question was one with cushioned seats, in which there was no smoking, so far as he knew; and there was evidence that there was very little difference between a first and second-class car; one witness saying that the only difference was that one holding a second-class ticket could not go into a sleeping or dining car. It is manifest from this testimony that the plaintiff was not given the accommodations which a second-class ticket entitled her to have, and she has a right to recover whatever damages she sus-

tained on this account. Under this view, if upon no other, the evidence fully warranted the verdict on this branch of the case. The jury were fully authorized to find that the conductor compelled her to ride in the car in which she was placed, and her so doing can not be considered as waiving her right to claim damages for not being furnished with the accommodations to which her ticket, treated as a second-class ticket, entitled her.

Upon the question of damage to baggage, the evidence, while conflicting, tended to establish the plaintiff's theory that her baggage had been negligently exposed to the weather and had been damaged in consequence thereof, that the agent agreed to send the box by freight the next morning and let the plaintiff pay the freight upon its arrival at her destination, and that he did not do so. We think, therefore, that the jury were authorized to award some damages on account of detention of and damage to the baggage. The judge in his charge eliminated from the case all the allegations of damage growing out of the sickness and death of the plaintiff's son; and we are of opinion that a recovery was warranted for whatever damage the plaintiff reasonably and naturally sustained as a result of the failure of the company to provide her with proper accommodations on the train from Chattanooga, and also for the damages sustained by reason of the detention of and damage to her baggage. The motion for a new trial complains of a number of extracts from the judge's charge, to the effect that if the agent gratuitously and on his own motion furnished plaintiff with second-class tickets, without any request from the plaintiff, and without knowledge on her part that she was receiving this class of tickets, she would be entitled to ride in a first-class coach and receive first-class accommodations. It is complained that these charges were not authorized by the evidence; but we do not think they are subject to this criticism. It was shown that the plaintiff did not ask for second-class tickets, and that she did not know she had received such tickets until informed by the conductor of this fact after she left Chattanooga. So that the objection to the charges is not well taken, and we are not called on to decide whether they stated correct propositions of law in the abstract or not. Further complaint was made that the judge charged the jury to consider whether the agent at Dalton "guaranteed" that there would be a connection in Chattanooga. It is contended that there

was no evidence to authorize this charge.    It is true that if the word guaranty be given its strict legal signification, there was no evidence of a guaranty.    The plaintiff, however, did testify that when she offered to surrender her tickets and go by another route, "they told me that the other train would be held in Chattanooga until I got there; that I need not be uneasy."    In view of this evidence, and in view of the entire record, we do not think the inaccuracy in the foregoing charge of sufficient moment to require a new trial.    We have carefully read the entire record, and have reached the conclusion that the trial judge has not abused his discretion in refusing to grant a new trial.

*Judgment affirmed.    All the Justices concurring.*